## Case No. 4:21-CV-03591

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

IN RE VERT SOLAR FINANCE, LLC,

DEBTOR.

EVA S. ENGELHART, CHAPTER 7 TRUSTEE,

APPELLANT,

V.

JOAQUIN ALTENBERG, CLEAN ENERGY NEXUS, LLC, VERT INVESTMENT GROUP, LLC, AND ALISON ALTENBERG,

APPELLEE.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BANKR. CASE NO. 19-33347
ADV. PROCEEDING NO. 21-03442

## APPELLANT EVA S. ENGELHART, CHAPTER 7 TRUSTEE'S BRIEF

Dated:  December 30, 2021

**FOX ROTHSCHILD LLP**

Trey A. Monsour, Esq. (Tex. Bar No. 14277200)
Sidney S. Liebesman (admitted *pro hac  vice*)
2900 West Dallas Street, #515
Houston, TX 75219
Tel: (713) 927-7469
      (302) 654-7444
Email: tmonsour@foxrothschild.com
        sliebesman@foxrothschild.com

*Special Counsel to Eva S. Engelhart, Chapter 7*
*Trustee, Appellant*

129148320.3

# TABLE OF CONTENTS

**PAGE**

I.  JURISDICTIONAL STATEMENT ...............................................................1

II.  STANDARD OF REVIEW .......................................................................1

III.  STATEMENT OF THE ISSUES PRESENTED ......................................2

IV.  STATEMENT OF THE CASE ..................................................................4

    A.  Factual Background............................................................................5

    B.  Procedural History.............................................................................9

V.  ARGUMENT SUMMARY .....................................................................11

VI.  ARGUMENT..........................................................................................12

    A.  12(b)(6) Standard.............................................................................12

    B.  The Bankruptcy Court Erred When It Dismissed Trustee's Claim for Conversion.....................................................................................13

    C.  The Bankruptcy Court Erred When It Dismissed Trustee's Claims for Actual and Constructive Fraudulent Transfers under the Bankruptcy Code and Texas Law. ...................................................17

        1.  Trustee's Fraudulent Transfer Claims - Federal ....................17

            i.  Counts Two...................................................................18

            ii.  Counts Three and Four .................................................20

        2.  Trustee's Fraudulent Transfer Claims - State ..........................24

        3.  Trustee's Claim Pursuant to 11 U.S.C. § 550(a) Is Valid........25

    D.  The Bankruptcy Court Erred When it Dismissed Trustee's Claim for Breach of Fiduciary Duty Against Joaquin Altenberg and Knowing Participation and Furtherance of Mr. Altenberg's Breaches by Defendants CEN, VIG, and Alison Altenberg. ...................................................................................26

        1.  Breach of Fiduciary Duty.........................................................26

        2.  Knowing Participation Conspiracy to Breach Fiduciary Duty.28

        3.  The Bankruptcy Court Erred When It Dismissed Trustee's Claim for Unjust Enrichment...................................................29

VII.  CONCLUSION.......................................................................................30

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliantgroup, L.P. v. Feingold*,
    803 F. Supp. 2d 610 (S.D. Tex. 2011) ................................................................14

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
    562 F.3d 699 (5th Cir. 2009) ....................................................................13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................12, 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................12

*D'Onofrio v. Vacation Publications, Inc.*,
    888 F.3d 197 (5th Cir. 2018) ..........................................................................15

*Eun Bok Lee v. Ho Chang Lee*,
    411 S.W.3d 95 (Tex. App. 2013)......................................................................29

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) ...........................................................................26

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ..........................................................................30

*Matter of Life Partners Holdings, Inc.*,
    926 F.3d 103 (5th Cir. 2019) ..........................................................................24

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) ..........................................................................28

*In re Northstar Offshore Grp., LLC*,
    616 B.R. 695 (Bankr. S.D. Tex. 2020) .............................................................24

*Perry v. Dearing*,
    345 F.3d 303 (5th Cir. 2003) .............................................................................1

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001), *cert. denied sub nom Cloud v. United
    States*, 122 S. Ct. 2665 (2002) ........................................................13, 18, 27, 28

*Staton Holdings, Inc. v. First Data Corp.*,
    No. CIV.A.3:04-CV-2321-P, 2005 WL 1164179 (N.D. Tex. May
    11, 2005) ......................................................................................................14

*In re Supplement Spot, LLC*,
    409 B.R. 187 (Bankr. S.D. Tex. 2009) ............................................................17

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) ....................................................................13, 27

*In re: Upd Glob. Res., Inc.*,
    No. BR 11-36970-H5-11, 2016 WL 3964362 (S.D. Tex. July 21,
    2016) ..............................................................................................................1

*Webb v. Reserve Life Insurance Co. (In re Webb)*,
    954 F.2d 1102 (5th Cir. 1992) ........................................................................1

*West v. Hsu (In re Advanced Modular Power Sys., Inc.)*,
    413 B.R. 643 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. West*,
    No. ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) .........*passim*

## Statutes

11 U.S.C. ................................................................................................................17

11 U.S.C. § 101(32) ..............................................................................................23

11 U.S.C. § 544(b)(1)..............................................................................................24

11 U.S.C. § 548(a)(1)(A) .................................................................................17, 18, 19, 22

11 U.S.C. § 548(a)(1)(B) .................................................................................17, 20, 22

11 U.S.C. § 550(a) ............................................................................................25, 26

28 U.S.C. § 157(a) ................................................................................................1

28 U.S.C. § 158(a) ................................................................................................1

28 U.S.C. § 1334 .................................................................................................1

Comm. Code § 24.0005(a)(2)(A) ....................................................................24

Comm. Code § 24.0005(b) ..............................................................................25

Texas Fraudulent Transfer Act ....................................................................4, 24

**Other Authorities**

F. Civ. R. P. 12(b)(6) ...............................................................................*passim*

## I.   JURISDICTIONAL STATEMENT

The subject of this appeal is an Order Granting Motion to Dismiss Trustee's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), which the United States Bankruptcy Court for the Southern District of Texas Houston Division entered on October 19, 2021. Because this is a Chapter 7 bankruptcy proceeding, the bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(a). 28 U.S.C. § 158(a) governs the jurisdiction of this Court over an appeal from a bankruptcy court's order.

## II.   STANDARD OF REVIEW

Because the district court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions. *See Webb v. Reserve Life Insurance Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *see also Perry v. Dearing,* 345 F.3d 303, 308–09 (5th Cir. 2003). "The Bankruptcy Court's decisions to dismiss the adversary case under Federal Rule of Civil Procedure . . . Rule 12(b)(6) for failure to state a claim are legal decisions subject to *de novo* review." *In re: Upd Glob. Res., Inc.*, No. BR 11-36970-H5-11, 2016 WL 3964362, at *7 (S.D. Tex. July 21, 2016) (citing *U.S. Brass Corp. v. Travelers Insurance Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002)).

1

### III.   STATEMENT OF THE ISSUES PRESENTED

1.      Under Texas law, conversion occurs when a person makes an unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. The Second Amended Complaint pled that Defendant Joaquin Altenberg misappropriated the tangible and intangible property of VERT Solar Finance, LLC (the "Debtor") to form and operate Clean Energy Nexus, LLC ("CEN"). Specifically, the Second Amended Complaint pled that Mr. Altenberg used the Debtor's website layout, customer lists, contracts, office equipment and staff to transition the business away from the Debtor to CEN. Did the Second Amended Complaint state a claim for conversion against Mr. Altenberg?

2.      Under the Bankruptcy Code and Texas law, a trustee may avoid any transfer of an interest of the debtor in property that was made with actual intent to hinder, delay, or defraud the debtor's other creditors. The Second Amended Complaint pled that, after secretly forming CEN, Mr. Altenberg caused the Debtor's tangible and intangible assets, including the Debtor's interest in not less than five lucrative solar energy projects, to be transferred to CEN in an attempt to avoid his business and litigation creditors. Did the Second Amended Complaint state a claim for avoidance of these actual fraudulent transfers?

2

3.      Under the Bankruptcy Code and Texas law, a trustee may avoid any transfer of an interest of the debtor for less than reasonably equivalent value. The Second Amended Complaint pled that Mr. Altenberg caused the Debtor's tangible and intangible assets, including the Debtor's interest in not less than five lucrative solar energy projects, to be transferred to CEN without consideration. Additionally, the Second Amended Complaint pled that Mr. Altenberg caused the Debtor to pay his wife, Defendant Alison, a salary for a job that she never performed. Mr. Altenberg used the Debtor's website layout, customer lists, contracts, office equipment and staff without any consideration being paid to the Debtor. Did the Second Amended Complaint state a claim for avoidance of these constructive fraudulent transfers?

4.      Under Texas law, a business officer owes the company the fiduciary duties of care and loyalty. The Second Amended Complaint pled that Mr. Altenberg controlled both the Debtor and CEN and owed these duties to the Debtor as its chief executive officer and managing member, and that Defendants CEN, VIG, and Alison were aware of the duties that Mr. Altenberg owed to the Debtor. Did the Second Amended Complaint state a claim for breach of fiduciary duty against Mr. Altenberg and for knowing participation and furtherance of Mr. Altenberg's breaches by Defendants CEN, VIG, and Alison, his wife?

3

5.     Under Texas law, unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one that it would be unconscionable to retain. The Second Amended Complaint pled that, by engaging in the fraudulent transfers and acts of conversion, the Defendants received money or other interests belonging to the Debtor for less than reasonably equivalent value. Did the Second Amended Complaint state a claim for unjust enrichment against the Defendants?

6.     Under the Texas Fraudulent Transfer Act, a court may award costs and reasonable attorney's fees. Is the Trustee entitled to recover her costs and reasonable attorney's fees in her claims against the Defendants?

7.     Is the Trustee entitled to pre- and post-judgment interest?

## IV.   STATEMENT OF THE CASE

This appeal stems from Joaquin Altenberg's illegal and opportunistic creation and use of multiple clone entities to defraud the Debtor's creditors, to usurp the Debtor's business opportunities, and to fraudulently transfer the Debtor's lucrative assets away from its creditors. Chapter 7 Trustee, Eva S. Engelhart, appeals the dismissal by the bankruptcy court of Trustee's Second Amended Complaint on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). While a detailed recitation of the facts can be found in the Trustee's Second Amended Complaint ("Complaint"), the relevant facts are discussed below.

129148320.3

## A.   Factual Background

Mr. Altenberg formed the Debtor on January 16, 2015, to engage in commercial and industrial solar projects, naming himself its Chief Executive Officer. Complaint at ¶ 12. The Debtor became actively involved in the business of acquiring, developing, owning, and improving commercial and industrial solar energy projects from its office in Houston, Texas. *Id*.

To generate business as a start-up company, Debtor solicited information about potential or actual energy projects from developers and clients, using it to analyze and determine whether a solar energy project was worth pursuing. *Id*. at ¶ 14. The end product of this process, developed and refined by the Debtor, was referred to as a Preliminary Assessment Report ("PAR"). PARs provided critical information used to make a decision whether a specific project was high-yielding and therefore worth pursuing. *Id*.

To fund the Debtor's start-up operations, Mr. Altenberg formed a fund called the VERT Solar Fund I, LLC (the "VERT Fund") in which he cause three investors (the "VERT Fund Investors") to invest $6.8 million. *Id*. at ¶ 15. Mr. Altenberg was supposed to use that money to develop and finance the Debtor's solar energy projects following specified protocols. However, Mr. Altenberg subsequently misappropriated the VERT Fund Investor's money such that it was quickly depleted without return. *Id*.

5

As a result of Mr. Altenberg's misappropriation of investor funds, by November 2017 the Debtor was teetering on the brink of insolvency and defending against two separate lawsuits. *Id*. at ¶¶ 16-17. The VERT Fund Investors sued Mr. Altenberg and the Debtor for misappropriating investor funds, resulting in a post-trial judgment of over $6 million against him in December 2020 for fraud and breach of fiduciary duty.[1] *Id*. The second lawsuit was a collection action filed by a creditor.[2] *Id*. at ¶¶ 17.

Amidst the Debtor's legal and financial challenges in early 2018, Mr. Altenberg and the Debtor were presented with a new project—a large-scale

---

[1] *See HOMF II Investment Corp., et al. v. Altenberg, et al.*, Delaware Chancery Court, Case No. 2017-0293-JTL (the "Delaware Action"). The Delaware Action proceeded to trial against Altenberg in September 2019 (the Debtor's bankruptcy filing on June 14, 2019 stayed the action against VERT), and the Delaware Court held that Altenberg breached his fiduciary duty of loyalty to the VERT Fund and that Altenberg fraudulently induced the VERT Fund Investors to invest in the VERT Fund. *Id*. The Delaware Court entered a judgment against Altenberg for over $6 million (damages and attorneys' fees). *Id*. In connection with the post-trial award of attorneys' fees on December 7, 2020, the Delaware Court stated: "Altenberg's pre-litigation conduct reflected a pattern of fraud and misrepresentation that was sufficiently egregious to warrant shifting fees. During this litigation, Altenberg engaged in a pattern of serial misconduct that provides additional support for shifting attorneys' fees and expenses." *Id*.

[2] Teris, a creditor of the Debtor, sued Debtor in the County Civil Court for Harris County, Texas seeking the $61,597.44 owed it by Debtor, plus attorneys' fees and costs (Cause No. 1109763) (the "Teris Action"). On August 27, 2018 (two weeks before Altenberg secretly formed CEN), Teris filed a motion for summary judgment seeking judgment against Debtor for $67,097.44 ($61,597.44 debt, plus $5,500 in attorneys' fee and costs). On September 24, 2018, Teris was granted a judgment against the Debtor in the Teris Action for $67,097.44.

6

manufacturing solar energy project in Juncos, Puerto Rico (the "Juncos Project") by SRI Energy ("SRI"). *Id*. at ¶ 32. Throughout 2018, Debtor and SRI collaborated on a request for proposal issued by Medtronic, PLC, a global medical device manufacturer, to develop the Juncos Project (the "Medtronic RFP"). *Id*. at ¶ 35. The Debtor collaborated with SRI on the Medtronic RFP based on the parties' mutual agreement that they would continue to work together on the Juncos Project once it was awarded by Medtronic. *Id*.

The Debtor prepared a PAR (at the Debtor's expense and using the Debtor's software and other assets) for the Junco Project based on the information provided by SRI, and presented SRI with a copy of the PAR on the Debtor's letterhead. *Id*. at ¶ 36. The PAR showed a high yield for the Juncos Project. *Id*.

The Juncos Project provided the Debtor with an opportunity to return to profitability and service its debts, but that was not to be, since Mr. Altenberg had previously secretly formed CEN, Debtor's clone entity, to usurp the Debtor's business agreements, interests, and opportunities, including the Juncos Project and four solar energy projects in Sault St. Marie, Michigan (the "Tribesolar Projects"). *Id*. at ¶ 18. To conceal his involvement, Mr. Altenberg used VERT Investment Group, LLC ("VIG") as the founding and sole member of CEN in an attempt to elude Debtor's creditors and investors who had already haled him into court. *Id*. at ¶¶ 19-20.

7

Debtor and CEN had the same employees. *Id*. at ¶ 23. The initial website for CEN was the same website used by the Debtor, whose logo Mr. Altenberg replaced with CEN's, leaving the remaining contents identical. *Id*. at ¶ 24. Mr. Altenberg used the same marketing materials to secure investors for CEN that he did for Debtor, misleadingly referring to CEN as "our new brand" *Id*. at ¶¶ 21, 23. Mr. Altenberg used printed materials with Debtor's letterhead, and Debtor's email address to solicit business for CEN. *Id*. at ¶ 30. Just three months before putting the Debtor into bankruptcy, Mr. Altenberg started reaching out to business contacts from the Debtor's customer list to solicit investment interest in the Juncos Project. *Id*. at ¶ 21.

Mr. Altenberg's efforts to evade his creditors and usurp the Debtor's interest in various projects paid off handsomely. *Id*. at ¶ 37. Once Medtronic awarded the Juncos Project, Mr. Altenberg caused CEN, instead of the Debtor, to enter into a joint development agreement with SRI Energy for the Juncos Project and the Tribe Solar Projects, collectively valued at $32 million. *Id*. Mr. Altenberg began to pay himself a salary of $350,000 from CEN. *Id*. at ¶ 41. Then, again using CEN as Debtor's clone, he executed a Membership Interest Purchase Agreement with another entity, Renewable Energy Alternatives ("REA"), for REA to purchase the Juncos Project for $10 million, of which at least $3,455.000 has been paid to CEN as of January 26, 2021. *Id*. ¶¶ at 45-46.

8

In the meantime, Mr. Altenberg kept his wife, Alison Altenberg, who knew nothing about solar energy, on the Debtor's payroll, which included a salary of up to $75,000 and a bonus of $25,000. *Id*. ¶ 49. Mrs. Altenberg did not participate in company meetings and was never in the office, except the occasional time she would come in to bring snacks. *Id*. at ¶ 50-51.

With litigation against it pending, its business being diverted to CEN by Mr. Altenberg, Mr. Altenberg paying himself a handsome salary, and causing Debtor to pay his spouse for work not performed, on June 14, 2019, Debtor filed its voluntary petition for relief under chapter 7 of the Bankruptcy code. *Id*. at ¶ 52. Around the same time, REA wired into CEN's bank account a payment of $500,707. *Id*. at ¶ 57. CEN remains involved in solar projects, and the Juncos Project is currently operational. *Id*. at ¶ 58.

## B.    Procedural History

On June 11, 2021, the Trustee, on behalf of the Debtor's bankruptcy estate, brought an adversary proceeding against Mr. Altenberg, his wife, Alison Altenberg, VIG, CEN, and CEN Juncos Solar, LLC ("CEN Juncos") (the project entity formed by Mr. Altenberg and fully owned by CEN to hold the Juncos Project). (ECF No. 1).

The Trustee's Original Complaint (ECF No. 1) contained twelve counts against the Defendants including: (1) fraudulent transfers under federal and Texas law; (2) recovery of fraudulent transfers under federal law; (3) breach of fiduciary

duty under Texas law; (4) knowing participation in a conspiracy to breach fiduciary duties under Texas law; (5) unjust enrichment; and (6) attorney's fees and pre- and post-judgment interest. *Id*.

Thereafter, Defendants filed two motions to dismiss for failure to state a claim. (ECF Nos. 8 and 11). The Trustee filed her Response on August 10, 2021 (ECF No. 35) and, just two days later without the opportunity for oral argument, the bankruptcy court granted the Defendants' motions to dismiss. (ECF Nos. 36 and 37). The bankruptcy court gave the Trustee fourteen days to amender her complaint. *Id*.

The Trustee filed her Amended Original Complaint on August 26, 2021, removing CEN Juncos as a defendant and addressing each of the issues the bankruptcy court had highlighted in its Order. (ECF No. 44). Subsequently, the remaining Defendants filed a Second Motion to Dismiss on September 6, 2021. (ECF No. 48). Thereafter, the Trustee filed her Response (ECF No. 62) and a Second Amended Complaint (ECF No. 63) incorporating an additional claim for conversion and additional facts learned through third-party discovery.

The bankruptcy court directed Defendants to answer the Trustee's Second Amended Complaint or amend their Second Motion to Dismiss and set oral argument for October 20, 2021 (ECF No. 64). The Defendants filed an Amended Second Motion to Dismiss on October 13, 2021 (ECF No. 66).

10

Thereafter, before the Trustee could file her Response to the Defendants' Amended Second Motion to Dismiss and in advance of the oral argument scheduled for October 20, 2021 the bankruptcy court issued its Order Granting Motion to Dismiss ("Order") (ECF No. 67). The Trustee now appeals.

## V.    ARGUMENT SUMMARY

The Trustee's Complaint, together with attached exhibits, describes with particularity the actions of the Defendants that give rise to the thirteen counts brought against them. The bankruptcy court, without affording the Trustee an opportunity to respond to Defendants' motion, summarily dismissed all thirteen of the counts alleged by the Trustee in the Complaint. *See* Order at * 10. In so doing, the bankruptcy court erred. In its Order, the bankruptcy court appears to ignore many of the Trustee's factual allegations, to misapply the applicable pleading standard, and to take particular issue, as a basis for the dismissal, with the Trustee's characterization of the property converted, fraudulently transferred, or otherwise misappropriated by Mr. Altenberg, his clone entities, and his wife. As explained below, the Trustee has pled sufficient facts to proceed with this litigation.

# VI.    ARGUMENT

## A.    12(b)(6) Standard

The court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"[T]he pleading standard Rule 8 announces **does not require** 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (emphasis added). Those factual allegations **must then be taken as true, even if doubtful**. *Twombly*, 550 U.S. at 555 (emphasis added). In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id.* at 557. The court must accept the factual allegations of the complaint as true, **view them in a light most favorable to the plaintiff**, and **draw**

12

**all reasonable inferences in the plaintiff's favor**. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom Cloud v. United States*, 122 S. Ct. 2665 (2002) (emphasis added). Motions to dismiss under Rule 12(b)(6) are viewed with **disfavor** and are granted **sparingly**. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

Here, the bankruptcy court summarily dismissed Trustee's Second Amended Original Complaint (ECF No. 63) and her thirteen claims for relief. The bankruptcy court issued its second Order Granting Motion to Dismiss upon Defendants' Amended Second Motion to Dismiss (ECF No. 66) without giving plaintiff an opportunity to file a response or present oral argument which the Court had calendared for October 20, 2021. This was error.

**B.     The Bankruptcy Court Erred When It Dismissed Trustee's Claim for Conversion.**

The bankruptcy court dismissed Trustee's Count One – Conversion. To establish a claim for conversion of property, a plaintiff must assert: (1) that the plaintiff is legally entitled to the property; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). The last two

13

elements "may be excused if it is apparent"—as it is here—"that the defendant would not reverse its conduct." *Id*.; (EFC No. 63 at ¶ 65, 66).

The reason for the dismissal given by the court is elusive, but boils down to the court's reasoning that the property the Trustee alleges has been converted is <u>intangible</u> only. Order at * 5. That is incorrect. Trustee's Second Amended Original Complaint is replete with specific factual allegations sufficient for it to proceed with its claim for conversion, which the bankruptcy court appears to have ignored. The Trustee has alleged that Mr. Altenberg wrongfully exercised dominion over Debtor's property, including Debtor's **<u>website, phone number, vendor information and customer information</u>**. (ECF No. 63 at ¶ 61, 63). The Trustee has further alleged that Mr. Altenberg was an **<u>employee</u>** of Debtor and became an **<u>employee</u>** of CEN. *Id*. at ¶ 23).

At least one Texas court has concluded that a phone number may be subject to conversion. *See Staton Holdings, Inc. v. First Data Corp.*, No. CIV.A.3:04-CV-2321-P, 2005 WL 1164179, at *6 (N.D. Tex. May 11, 2005) ("In light of the undisputed fact that this particular phone number was of immense (potential) value to Plaintiffs and others, the Court hereby finds that a cause of action for conversion may lie."). And "Texas courts consider certain customer lists as property subject to conversion and impose liability when a competitor obtained the list while working for a former employer." *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d

14

610, 626 (S.D. Tex. 2011) (citing *Deaton v. United Mobile Networks, L.P.,* 926 S.W.2d 756, 762 (Tex.App.-Texarkana 1996) and *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624 (Tex.App.-Houston [14th Dist.] 1992, writ denied)). Taken as true, and viewed most favorable to the Trustee, these allegations are sufficient to sustain a claim for conversion.

The Trustee has further alleged that SRI and Debtor had a "mutual agreement" to work on the Juncos Project pursuant to the Medtronic RFP, that Mr. Altenberg caused CEN to convert for CEN's and Mr. Altenberg's benefit, using Debtor's software and on Debtor's letterhead (ECF No. 63 at ¶ 35—37). The bankruptcy court ignored these allegations to conclude that the Trustee "fail[ed] to identify any writing in which the debtor has a legal property interest, which was assigned or transferred by Altenberg" relying on *D'Onofrio v. Vacation Publications, Inc.,* 888 F.3d 197, 212 (5th Cir. 2018), for the proposition that "[t]here is no cause of action under Texas law for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Id.* (internal citations omitted); Order at * 5. But the Trustee has identified a valuable "mutual agreement," a "summary of the Debtor's financial analysis of the Juncos Project . . . printed on the Debtor's letterhead" and a Preliminary Assessment Report "prepared . . . at the Debtor's expense and using the Debtor's software," (EFC No. 63 at ¶ 30, 35-36, 63), that Mr. Altenberg wrongfully

15

exercised dominion over, as alleged in the Trustee's Second Amended Complaint. These allegations are legally sufficient for the Trustee to proceed on its conversion claim.

The facts alleged by the Trustee are nearly identical to the facts in *West v. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643, 669 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. West*, No. ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) where the defendant's actions, whose "new business, AMP Services, occupied the same office space as AMPS [defendant's old business], used AMPS's telephone number, vendor information, customer lists, and performed the same or similar services for customers that had previously done business with AMPS, were deemed by the court to constitute conversion. The defendant was found "liable for damages caused by the conversion of the [company's] **property interests**." *Id*. The court there noted further that "[a] manual taking of the property is not necessary for conversion." *Id*. The bankruptcy court here therefore erroneously concluded that no property interest existed susceptible to conversion and the Trustee therefore respectfully requests that this Court reverse the bankruptcy court's dismissal of Count One.

16

**C.     The Bankruptcy Court Erred When It Dismissed Trustee's Claims for Actual and Constructive Fraudulent Transfers under the Bankruptcy Code and Texas Law.**

### 1.      *Trustee's Fraudulent Transfer Claims - Federal*

The Trustee brought Count Two of Trustee's Second Amended Original Complaint against Mr. Altenberg, CEN, and VIG, pursuant to Bankruptcy Code § 548(a)(1)(A). The Trustee brought Count Three against Mr. Altenberg, CEN, and VIG, and Four, against Mr. Altenberg and Mrs. Altenberg, pursuant to Bankruptcy Code § 548(a)(1)(B). *See Complaint* at ¶¶ 68-83.

"To prevail on a claim for fraudulent transfer under [11 U.S.C.] § 548(a)(1)(A), the Trustee must prove the following elements . . . : (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the Petition Date; and (3) the transfer was made with actual intent to hinder, delay, or defraud the Debtor's creditors." *West v. Hsu*, 413 B.R. at 673. "To prevail on a claim for fraudulent transfer under § 548(a)(1)(B), the Trustee must demonstrate: (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the petition date; (3) the Debtor received less than reasonably equivalent value in exchange for such transfer; and (4) the Debtor was insolvent at the time of such transfer." *In re Supplement Spot, LLC*, 409 B.R. 187, 199 (Bankr. S.D. Tex. 2009).

The reason for the dismissal of the aforementioned claims articulated by the bankruptcy court was that "the Trustee failed to identify any transferred assets in which the Debtor would have had a legal or equitable interest in (sic) at the time of filing." Order at * 7. Even though it acknowledged that the Trustee previously cited *West v. Hsu*, where the actions of the defendant mirror those of Mr. Altenberg through his clone entities, and where the court found liability under 11 U.S.C. § 548(a)(1)(A) and (B), as support, the bankruptcy court attempted to distinguish the facts of the case from the case at bar—as opposed to viewing them and the inferences therefrom in the light most favorable to the Trustee. Order at 7; *Ramming*, 281 F.3d 158, 161 (5th Cir. 2001). In so doing, the bankruptcy court again erred.

### i.    *Counts Two*

Count Two names Mr. Altenberg, CEN, and VIG as recipients of the Debtor's tangible and intangible assets, namely "marketing and promotional materials, website, phone number, vendor lists, customer lists, and, specialized knowledge." Complaint at ¶ 70. In *West v. Hsu*, the trustee brought an adversary proceeding against defendant Hsu individually and as an agent of an entity, and two entities created by Hsu to assume and exercise control over the debtor entity's "business and . . . related telephone number, name, acronym, customer information and customer lists, address, vendor information, and competitive advantages in the forms of goodwill and specialized knowledge." 413 B.R. at 656. In that case, the newly

18

formed entity "issued an invoice to a customer of [the Debtor] for . . . services." *Id*.

"On the Petition Date, the Debtor had tangible assets with little or no value." *Id*. The

trustee argued that "pursuant to 11 U.S.C. § 548(a)(1)(A), he should be able to avoid

the transfers of tangible and intangible property made to AMP Services during the

six-month period before the petition was filed because such transfers are fraudulent

transfers." *Id*. at 673. The court agreed with the trustee. *See id*. In so doing, the Court

specifically concluded that the "telephone number, name, acronym, customer

information, address, vendor information, and competitive advantages in the forms

of goodwill and specialized knowledge"—the fraudulent transfer of which the

trustee was seeking to avoid—"**were the Debtor's property**." *Id*. (emphasis added).

Just like in *West v. Hsu*, Mr. Altenberg, through his newly formed entity, CEN,

"began contacting the Debtor's . . . customers" and "performed essentially the same

business as . . . the Debtor." *Id*. Thus, the first element—transfer of the Debtor's

property—can be established here on the facts pled by the Trustee under *West v.

Hsu*.

Incredibly, the bankruptcy court's Order states that "[t]he Trustee has **only**

alleged that the newly formed entity, CEN, contracted with SRI Energy, instead of

allowing the debtor to enter into that contract." Order at * 7 (emphasis added). This

flies in the face of the specific allegations that "Altenberg misappropriated . . .

[Debtor's] marketing and promotional materials, website, phone number, vendor

19

lists, customer lists, and specialized knowledge." Complaint at ¶ 70. Assuming these allegations are true, as the court must, this fraudulently transferred property is the same type and kind of property as discussed in *West v. Hsu*. Moreover, viewing the factual allegations in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor, as required under the 12(b)(6) standard, the fact that a "mutual agreement . . . to work together on the Juncos Project once it was awarded by Medtronic" existed, *see Complaint* at ¶ 35, cannot be viewed as "a mere expectation of business," see Order at * 7, but, rather, **must be viewed** as Debtor's property when the 12(b)(6) standard is properly applied.

Just like in *West v. Hsu*, the remaining elements two and three can be established on the facts pled by the Trustee here. As pled, all of the alleged transfers were made within two years of the Petition Date, and the Defendants had actual intent to hinder, delay, or defraud the Debtor. Mr. Altenberg, just like Hsu, "created an entity virtually identical to . . . the Debtor" and was "actively pursuing the Debtor's clients and performing the same business as . . . the Debtor." *Id*. at 674; Complaint at ¶ 35, 70, 71. Therefore, the Trustee respectfully requests that this Court reverse the bankruptcy's court dismissal of Count Two of its Complaint.

### ii.   *Counts Three and Four*

Counts Three and Four, brought by the Trustee pursuant to Bankruptcy Code § 548(a)(1)(B), were likewise summarily dismissed by the bankruptcy court. The

Trustee in Count Three credibly alleges that "[n]ine months prior to the Petition Date, . . . Altenberg caused . . . Debtor's . . . interests in the lucrative Juncos Project and Tribesolar Projects, to be transferred to CEN without compensation." Complaint at ¶ 21. It further alleges that "Altenberg caused CEN, rather than the Debtor, to enter the Joint Development Agreement with SRI," and that "the Debtor was rendered insolvent when Altenberg transferred the Juncos Project and the Tribesolar Projects—the Debtor's last remaining assets of value—to CEN." *Id.*

The Debtor and SRI were well into a months-long bona fide collaboration on the Juncos Project that began in early 2018. Complaint at ¶ 30-36. This collaboration included Debtor's preparation of a Preliminary Assessment Report for the Junco Project—showing a very high yield—which Mr. Altenberg sent to SRI on the Debtor's letterhead. *Id.* at ¶ 36. The Debtor collaborated with SRI on the Medtronic Request for Proposal based on the parties' mutual agreement for joint development of the Juncos Project once awarded by Medtronic. *See id.* at ¶ 35-37. The Trustee further alleges the existence of "at least five solar projects in which the Debtor and SRI are collaborating" including the Tribesolar Projects. *Id.* at ¶ 33. The Juncos Project and the Tribesolar Projects were much more than "a mere expectation of business." Order at * 7. Rather, when the facts pled are accepted as true and viewed in the light most favorable to the Trustee, it becomes clear that these projects were lucrative, bona fide business collaborations between Debtor and other entities, and

21

Mr. Altenburg's actions diverted the profits from the existing collaborations between the Debtor and the entities to CEN.

In Count Four, the Trustee alleges that "[d]uring the two-year period leading up to the Petition Date, . . . Altenberg caused the Debtor to pay to his wife . . . Alison, an unreasonably high salary disproportionate to the services rendered to Debtor." Complaint at ¶ 81. The alleged amount is at least $100,000—"a salary of $75,000" and "a $25,000 bonus," paid to her despite the fact that Alison Altenberg did not render any valuable services to Debtor. *Id*. Occasionally, she would bring treats to the office. *Id*. Despite these clear and specific factual allegations both in the "Factual Allegations" section of the Complaint and in each of the Counts at issue, the bankruptcy court ruled that the Trustee's Complaint "merely recites the elements of the cause of action and does not set forth the facts in support of these elements." Order at * 7.

Just like in *West v. Hsu*, the first two elements of § 548(a)(1)(B)—which are nearly identical to two of the three elements of § 548(a)(1)(A)—and the Trustee has pled sufficient facts in support of these elements. *Id*. at 674. The third element, whether the Debtor received less than reasonably equivalent value in exchange for the transfer, is likewise adequately supported by the facts pled by the Trustee in Counts Three and Four. As in *West v. Hsu*, the Juncos Project and the Tribesolar Projects were valuable collaborations to the Debtor, which the Debtor values to beat

22

least "$3.5 million." Complaint at ¶ 76. Instead, the Debtor received nothing and was rendered insolvent. *Id*. All the profits went to a competing entity—just like in *West v. Hsu.* There, the Court found that the profits were received by the competing entity and defendants "gave nothing of value in return for the transfer and use of the Debtor's assets." *Id*. at 675.

The $100,000 received by Alison Altenberg was likewise transferred to her for less than reasonably equivalent value. The Trustee's allegations, accepted as true and viewed in the light most favorable to it, show that she did not provide services of equivalent value: "she rarely, if ever was in the office performing work for the Debtor . . . aside from the occasional visit to deliver snacks." Complaint at ¶ 81. The Trustee alleges that Alison Altenberg "did not have an email address from Debtor, did not have access to Debtor's computer network, and did not have a business card from Debtor," and it is therefore reasonable to infer from these allegations that Alison Altenberg was not performing **any** valuable services to Debtor as an office manager, but was rather a sham employee collecting a paycheck by virtue of being Mr. Altenberg's wife. *Id*. at 51.

The fourth and final element—whether the Debtor was insolvent at the time of the transfer—has been pled with sufficient particularity here was well. Under the Bankruptcy Code, a corporate debtor is "insolvent" when "the sum of such entity's debt is greater than all of such entity's property, at a fair valuation." 11 U.S.C. §

23

101(32). Debtor became insolvent on or around February 20, 2019, when Mr. Altenberg caused the Juncos Project and Tribesolar Projects—the Debtor's last remaining assets of value—to be transferred to CEN. Complaint at ¶¶ 37, 89. Thus the Trustee has alleged facts sufficient to move forward with its complaint against Defendants on Counts Three and Four.

### 2.    *Trustee's Fraudulent Transfer Claims - State*

The Trustee brought Counts Five and Six against Mr. Altenberg, CEN and VIG, and Count Seven against Mr. Altenberg and Mrs. Altenberg pursuant to the Texas Fraudulent Transfer Act, Tex. Bus. & Comm. Code § 24.0005(a)(2)(A) ("TUFTA"), through Section 544(b)(1) of the Bankruptcy Code. Complaint at ¶ 84—103. The allegations mirror those in Counts Two, Three, and Four, respectively. The bankruptcy court stated that an "element common to fraudulent transfers under TUFTA and the Bankruptcy Code is that the transfer must be of an interest of the debtor in property." Order at * 6. "[T]he elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *M*

*atter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019); *accord In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 721 (Bankr. S.D. Tex. 2020). As can be seen from the analysis in the preceding section—elements one,

24

two, and three have been pled with sufficient particularity as to the Juncos Project, the Tribesolar Project, and Alison Altenberg's salary.

The factors that a court can consider in establishing "actual intent" include (1) whether the transfer or obligation was concealed; (2) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (3) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and (4) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. *See* § 24.0005(b). Actual intent is therefore apparent on the face of the complaint as pled: (1) the Complaint credibly alleges that Mr. Altenberg acted in secret—Complaint at ¶ 21, 87; (2) the Complaint credibly alleges that Mr. Altenberg and the Debtor were sued in 2017—Complaint at ¶ 16; (3) the Complaint credibly alleges that the Debtor received no value for the transferred assets—Complaint at ¶¶ 35-37, 87-89, 101; and (4) the Debtor was insolvent. Complaint at ¶ 37, 89. The Trustee is therefore entitled to proceed with Counts Five, Six, and Seven.

### 3.   Trustee's Claim Pursuant to 11 U.S.C. § 550(a) Is Valid

Because the bankruptcy court erroneously summarily dismissed Counts Two, Three, and Four, the Trustee is entitled to the remedy sought in Count Eight pursuant to 11 U.S.C. § 550(a), which provides that to the extent that a transfer is avoided

under Section § 548, a trustee may recover, for the benefit of the estate, the property

transferred or its value to be paid by "(1) the initial transferee of such transfer or the

entity for whose benefit such transfer was made; or (2) any immediate or mediate

transferee of such initial transferee." 11 U.S.C. §§ 550(a)(1) & (2); *see also West v.*

*Hsu*, 413 B.R. at 675. The Defendants are the initial transferees or the immediate or

mediate transferees of the initial transferees of the avoided transfers, as discussed

*supra*, and therefore the Trustee is entitled to proceed with Count Eight of the

Complaint.

**D.    The Bankruptcy Court Erred When it Dismissed Trustee's Claim for Breach of Fiduciary Duty Against Joaquin Altenberg and Knowing Participation and Furtherance of Mr. Altenberg's Breaches by Defendants CEN, VIG, and Alison Altenberg.**

### 1.    *Breach of Fiduciary Duty*

The bankruptcy court summarily dismissed Trustee's Claim for breach of

fiduciary duty to Debtor by Mr. Altenberg, and a civil conspiracy to breach fiduciary

duties to the Debtor by Defendants. Generally, the elements of a claim

for breach of fiduciary duty in Texas are "(1) the existence of a fiduciary duty, (2)

breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church*

*of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). The bankruptcy court did

not engage in an in-depth analysis of the facts as pled in support of Count Nine,

lumping it together with Count Ten—Civil Conspiracy—except to state that "these

claims are not supported by facts" and erroneously dismissed "Count Eight" in the

26

same paragraph, Count Eight bearing no relationship to the issue before it. Order at * 8. By so doing, the bankruptcy court erred.

The trustee credibly alleges that "Altenberg owed Debtor the fiduciary duties of care and loyalty as the chief executive officer and managing member of Debtor."[3] Complaint at ¶ 110. The trustee further credibly alleges that Mr. Altenberg breached this duty by "misappropriation and fraudulent transfer of . . . the Juncos Project and the Tribesolar Projects . . . and paying Alison [Altenberg] a salary for a job she did not perform." Complaint at ¶ 111. The Trustee further credibly alleges that "Debtor was substantially damaged as a result" of Mr. Altenberg's actions. Complaint at ¶ 113. The Trustee, throughout the Complaint, recites with particularity the various damages amounts in the form of payments to CEN and Alison Altenberg. *See, e.g.* Complaint at ¶¶ 46, 49, 57. Together, taken as true, and viewed in the light most favorable to the Trustee, these allegations are sufficient to overcome a 12(b)(6) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are granted sparingly. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). The bankruptcy court's summary grant of the Defendants' motion, therefore, was error.

---

[3] The Order states: "the Complaint fails to identify any duty the investors had to the debtor." *Id*. at * 9 (emphasis added).

27

### 2.     *Knowing Participation Conspiracy to Breach Fiduciary Duty*

Under Texas law, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Id*. The Trustee has adequately supported its allegations factually as to all three of the claim's elements. The first element of Count Ten, as discussed *supra*, Mr. Altenberg's duty to Debtor, is adequately pled. Further, as alleged, CEN, VIG, and Alison Altenberg "knew that Altenberg owed fiduciary duties of care and loyalty to the Debtor." Complaint at ¶ 117.

Furthermore, as noted earlier, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom Cloud v. United States*, 122 S. Ct. 2665 (2002) (emphasis added). Here, the Trustee is entitled to a reasonable inference drawn in Trustee's favor that Mr. Altenberg's wife would have been aware of her husband's role and duties as Debtor's chief executive officer and managing member.

28

*See* Complaint at ¶¶ 49, 101, 117. The same required favorable reasonable inference made in favor of the Trustee plaintiff suggests that CEN and VIG were also aware of the duties Mr. Altenberg owed to the Debtor by virtue of being Mr. Altenberg's creations. *See id*. And it is likewise reasonable to infer from the facts pled that all Defendants were aware that they were participating in the breach of the fiduciary relationship—Alison Altenberg by accepting the salary and bonus for services not performed as office manager, and CEN and VIG as controlled by Mr. Altenberg. *See id*. Therefore, the Trustee is entitled to proceed with its Counts Nine and Ten against the Defendants, and the bankruptcy court erred in dismissing them.

**E.    The Bankruptcy Court Erred When It Dismissed Trustee's Claim for Unjust Enrichment.**

The Trustee's Count Eleven—Unjust Enrichment—was also summarily dismissed by the bankruptcy court. "Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013) (citation omitted). A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Id*. The Trustee has pled sufficient facts to show that Mr. Altenberg, his wife, and his clone entities, wrongfully, fraudulently, and with undue advantage, secured a benefit running in the millions of dollars. *See Complaint* at ¶¶ 18, 21, 35-37, 40, 49, 51, 120.

Accepted as true, with all reasonable inferenced made in favor of the Trustee, these factual allegations are sufficient for the Trustee to proceed with Count Eleven of the Complaint.

Finally, because the Trustee's complaint states viable claims for relief that is plausible on its face, the relief sought, including attorney's fees, pre-judgment, and post-judgment interest, are likewise viable.

## VII.   CONCLUSION

The Trustee has pled sufficient factual allegations to state a claim upon which relief can be granted with regard to all of its causes of action, having pled factual content that allows the Court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The bankruptcy court should have "accept[ed] all well-pleaded facts as true and view[ed] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Instead, the bankruptcy court summarily dismissed all of plaintiff's causes of action. In so doing, the bankruptcy court erred. The Trustee respectfully requests that this Court reverse the bankruptcy's court grant of the Defendants' motion, and grant the Trustee such other and further relief to which the Trustee may be entitled.

Dated:      December 30, 2021

**FOX ROTHSCHILD LLP**

By:      */s/ Trey A. Monsour*
         Trey A. Monsour, Esq. (Tex. Bar No. 14277200)
         Fox Rothschild LLP
         Saint Ann Court
         2501 North Harwood Street, Suite 1800
         Dallas, TX 75201
         Tel: (214) 231-5796
         Fax: (972) 404-0516
         2900 West Dallas Street #515
         Houston, TX 75219
         Cell: (713) 927-7469
         E-mail: tmonsour@foxrothschild.com

         -and-

         Sidney S. Liebesman (admitted *pro hac vice*)
         919 N. Market Street, Suite 300
         Wilmington, DE 19801
         Telephone: (302) 654-7444
         E-mail: sliebesman@foxrothschild.com

         *Special Counsel to Eva S. Engelhart, Chapter 7*
         *Trustee, Appellant*

31

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 30, 2021, a true and correct copy of the above and foregoing *Brief of Appellant, Eva S. Engelhart,* was served electronically on all parties registered to receive electronic notice of filings in the case via the Court's ECF notification system (including counsel for the defendants) noted below.

*Counsel for Defendants Joaquin Altenberg, Clean Energy Nexus, LLC, VERT Investment Group, LLC, and Alison Altenberg*

Michelle V. Friery
Crain, Caton & James, PC
1401 McKinney, 17th Floor
Houston, TX 77010
mfriery@craincaton.com

/s/ Trey A. Monsour
Trey A. Monsour

32

129148320.3